**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JESSE CHEN, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:18-cv-10418-GBD |
| Plaintiff, | |
| v. | |
| SELECT INCOME REIT, DAVID M. BLACKMAN, ADAM D. PORTNOY, DONNA D. FRAICHE, WILLIAM A. LAMKIN, and JEFFREY P. SOMERS, | |
| Defendants. | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES</u>**

Dated:  December 14, 2018

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
Miles D. Schreiner
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
E-mail: jmonteverde@monteverdelaw.com
         mschreiner@monteverdelaw.com

*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ...................................... 1

III.  PLAINTIFF'S COUNSEL ARE ENTITLED TO THE FEE AWARD UNDER THE
COMMON BENEFIT DOCTRINE ....................................................................... 4

   A.    The Applicable Law ....................................................................... 5

   B.    The Supplemental Disclosures Provide a Substantial Benefit ......................... 8

       1.   SIR's, GOV's, and the Combined Company's Unlevered Free Cash Flows .............. 9

       2.   UBS's Valuation Analyses ..................................................................... 11

       3.   UBS's Conflicts of Interest ..................................................................... 13

       4.   The Board's Conflicts of Interest ............................................................. 14

   C.    The Requested Fee Award Is Reasonable ................................................ 16

       1.   The Time and Labor Required.................................................................. 17

       2.   The Customary Fees in Similar Cases ....................................................... 18

       3.   The Skill Requisite to Perform the Legal Service Properly, the Novelty and Difficulty
of the Question Presented by the Case, the Preclusion of Other Employment, and
Time Limitations Imposed by the Circumstances ...................................... 20

       4.   The Experience, Reputation, and Ability of the Attorneys ......................... 21

       5.   A Reasonable Multiplier is Appropriate Because Plaintiff's Counsel Undertook
Representation on a Contingent Basis ...................................................... 21

IV.  THE FEE AWARD IS ALSO SUPPORTED UNDER STATE LAW ............................... 23

V.   CONCLUSION................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases** **Pages**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
   421 U.S. 240 (1975) ..................................................................................... 5

*Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores* ,
   54 F.3d 69 (2d Cir. 1995) ....................................................................... 6, 16

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Alb.*,
   493 F.3d 110 (2d Cir. 2007) ....................................................................... 16

*Arnold v. Soc'y for Sav. Bancorp*,
   650 A.2d 1270 (Del. 1994) .......................................................................... 14

*Aron v. Crestwood Midstream Partners LP*,
   No. 4:15-CV-1367, 2016 U.S. Dist. LEXIS 152427 (S.D. Tex. Oct. 14, 2016) ................... 19

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................... 22

*Blau v. Rayette-Faberge, Inc.*,
   389 F.2d 469 (2d Cir. 1968) .......................................................................... 6

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ..................................................................................... 5

*BVF Partners L.P. v. New Orleans Emps. Ret. Sys.  (In re Celera Corp. S'holder Litig.)*,
   59 A.3d 418 (Del. 2012) ........................................................................ 12-13

*City of Providence v. Aéropostale, Inc.*,
   No. 11 Civ. 7132 (CM), 2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) ................ 18

*Cohn v. Nelson*,
   375 F. Supp. 2d 844 (E.D. Mo. 2005) ........................................................... 19

*Cooperstock v. Pennwalt Corp.*,
   820 F. Supp. 921 (E.D. Pa. 1993) .................................................................. 8

*David P. Simonetti Rollover IRA v. Margolis*,
   No. 3694-VCN, 2008 Del. Ch. LEXIS 78 (Del. Ch. June 27, 2008) ..................... 12

*Denton v. Pennymac Loan Servs., L.L.C.*,
   252 F. Supp. 3d 504 (E.D. Va. 2017) ........................................................... 20

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ................................................................ 17

*Fleisher v. Phx. Life Ins. Co.*,
No. 14-cv-8714 (CM), 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015) ............... 22

*Garcia v. Foulger Pratt Dev., Inc.*,
155 Md. App. 634, 845 A.2d 16 (2003) ................................................................ 23

*Goldberger v. Integrated Res.*,
209 F.3d 43 (2d Cir. 2000) ................................................................ 22

*Hall v. Cole*,
412 U.S. 1 (1973) ................................................................ 5

*In re AOL Time Warner S'holder Derivative Litig.*,
No. 02 Civ. 6302 (CM), 2009 U.S. Dist. LEXIS 124372 (S.D.N.Y. Nov. 9, 2009) ............. 16

*In re Celera Corp. S'holder Litig.*,
No. 6304-VCP, 2012 Del. Ch. LEXIS 66 (Del. Ch. Mar. 23, 2012) ..................................... 12

*In re Del Monte Foods Co. S'holders Litig.*,
No. 6027-VCL, 2011 Del. Ch. LEXIS 94 (Del. Ch. June 27, 2011) ..................................... 23

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
No. 05 Civ. 10240 (CM), 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ............. 22

*In re Flag Telecom Holdings*,
No. 02-CV-3400 (CM) (PED), 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 5, 2010) ... 20

*In re Glob. Crossing Sec. & ERISA Litig.* ,
225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................ 22

*In re Golden State Bancorp Inc. S'holders Litig.*,
No. 16175, 2000 Del. Ch. LEXIS 8 (Del. Ch. Jan. 7, 2000) ................................................. 24

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-Civ-8557 (CM), 2014 U.S. Dist. LEXIS 177175 (S.D.N.Y. Dec. 19, 2014) ....... 17-18

*In re Merrill Lynch & Co. Research Reports Sec. Litig.* ,
246 F.R.D. 156 (S.D.N.Y. 2007) ................................................................ 19-20

*In re Merrill Lynch & Co. Research Reports Sec. Litig.* ,
No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450 (S.D.N.Y. Jan. 31, 2007) ............... 18

*In re Nellson Nutraceutical, Inc.*,
356 B.R. 364 (Bankr. D. Del. Dec. 4, 2006) ....................................................... 12

*In re Netsmart Techs., Inc. S'holders Litig.*,
924 A.2d 171 (Del. Ch. Mar. 14, 2007) .............................................................. 12

*In re Pure Res. S'Holders Litig.*,
808 A.2d 421 (Del. Ch. 2002) ............................................................................ 11

*In re Rural Metro Corp. Stockholders Litig.*,
88 A.3d 54 (Del. Ch. 2014) ................................................................................ 13

*In re Schering-Plough/Merck Merger Litig.*,
No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121 (D.N.J. Mar. 25, 2010) ............ 6, 21

*In re Talley Indus., S'holders Litig.*,
No. 15961, 1998 Del. Ch. LEXIS 53 (Del. Ch. Apr. 9, 1998) ................................. 9

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................................. 18, 22

*In re Xoom Corp. Stockholder Litig.*,
No. 11263-VCG, 2016 Del. Ch. LEXIS 117 (Del. Ch. Aug. 4, 2016) .................... 24

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964) ............................................................................................. 4

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ............................................................................. 16

*Kahan v. Rosenstiel*,
424 F.2d 161 (3d Cir. 1970) ............................................................................... 6

*Kinney v. Int'l Bhd. of Elec. Workers*,
939 F.2d 690 (9th Cir. 1991) ............................................................................. 17

*Kopet v. Esquire Realty Co.*,
523 F.2d 1005 (2d Cir. 1975) ............................................................................. 5

*Koppel v. Wien*,
743 F.2d 129 (2d Cir. 1984) ........................................................................... 5, 7

*Lane v. Page*,
862 F. Supp. 2d 1182 (D.N.M. 2012) ................................................................. 5

*Lewis v. Gen. Emp't Enters., Inc.*,
    No. 91 C 0291, 1992 U.S. Dist. LEXIS 5464 (N.D. Ill. Apr. 10, 1992) ................................. 7

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................... 17, 22

*Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*,
    11 A.3d 1175 (Del. Ch. 2010) .................................................................... 9-10, 18

*McCafferty v. Local 254, SEIU*,
    186 F.3d 52 (1st Cir. 1999) ............................................................................. 17

*McKittrick v. Gardner*,
    378 F.2d 872 (4th Cir. 1967) .......................................................................... 21

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ............................................................................... 1, 5, 8

*Moore v. Verizon Commc'ns, Inc.*,
    No. Case No: C 09-1823 SBA, 2013 U.S. Dist. LEXIS 15609 (N.D. Cal. Feb. 5, 2013) ...... 19

*Nichting v. DPL Inc.*,
    No. 3:11-cv-141, 2011 U.S. Dist. LEXIS 76739 (S.D. Ohio July 15, 2011) ...................... 9

*Perez v. AC Roosevelt Food Corp.*,
    744 F.3d 39 (2d Cir. 2013) .............................................................................. 16

*Republic Technology Fund, Inc. v. Lionel Corp.*,
    483 F.2d 540 (2d Cir. 1973) ........................................................................... 10

*Resnik v. Swartz*,
    303 F.3d 147 (2d Cir. 2002) ........................................................................... 14

*Savoie v. Merchs. Bank*,
    84 F.3d 52 (2d Cir. 1996) ................................................................................. 8

*SEC v. Murphy*,
    626 F.2d 633 (9th Cir. 1980) .......................................................................... 11

*SEC v. Nat'l Student Mktg. Corp.*,
    457 F. Supp. 682 (D.D.C. 1978) ..................................................................... 10

*SEC v. Todd*,
    642 F.3d 1207 (9th Cir. 2011) ........................................................................ 11

*Shenker v. Laureate Educ., Inc.*,
  411 Md. 317 (2009) ................................................................................................ 23

*Smith v. Robbins & Myers* ,
  969 F. Supp. 2d 850 (S.D. Ohio 2013) .......................................................... 12, 13

*Unite Nat'l Ret. Fund v. Watts*,
  No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246 (D.N.J. Oct. 27, 2005) ................ 19

*United States v. Smith*,
  155 F.3d 1051 (9th Cir. 1998) ..................................................................... 9

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ..................................................................... 20

*Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth.*,
  No. 76 Civ. 2125 (RWS), 2005 U.S. Dist. LEXIS 5200 (S.D.N.Y. Mar. 31, 2005) ............. 18

*Wilson v. Great Am. Indus.*,
  855 F.2d 987 (2d Cir. 1988) ....................................................................... 15

*Wittman v. Crooke*,
  120 Md. App. 369, 707 A.2d 422 (1998) ....................................................... 23

*Yablonski v. United Mine Workers*,
  466 F.2d 424 (D.C. Cir. 1972) ..................................................................... 7

*Zirn v. VLI Corp.*,
  681 A.2d 1050 (Del. 1996) ......................................................................... 15

**Other**

15 U.S.C. § 78n(a) ...................................................................................... 2,5
17 C.F.R. § 229.1015 ................................................................................. 2, 14
17 C.F.R. § 240.14a-9 .................................................................................. 2

## I.      PRELIMINARY STATEMENT

Plaintiff Jesse Chen ("Plaintiff") through undersigned counsel, respectfully submits this memorandum of law in support of his motion for an award of attorneys' fees and expenses in the amount of $350,000 (the "Fee Award"). As a result of Plaintiff's efforts, Defendants disclosed plainly material information in connection with the shareholder vote on the proposed merger between Select Income REIT ("SIR" or the "Company") and Government Properties Income Trust ("GOV") (the "Proposed Merger") that was previously omitted from the proxy statements disseminated to solicit approval of the Proposed Merger—subject to the Shareholder Vote on December 20, 2018. Armed with the Supplemental Disclosures (defined below) SIR shareholders will now be able to fully assess the financial fairness of the Proposed Merger and cast an informed vote at the December 20, 2018 Shareholder Vote. Plaintiff and his counsel therefore have conferred a substantial benefit upon SIR shareholders, entitling Plaintiffs' counsel to an award of fees and expenses. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 396 (1970).

## II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On September 17, 2018, SIR announced the Proposed Merger with its largest shareholder, GOV. Given the entanglement of the two entities,[1] the announcement understandably raised concerns for SIR shareholders that negotiations may not have been conducted at arms' length potentially leading to less than fair Merger Consideration.

---

[1]      SIR and GOV are both Maryland REITs, managed by RMR, and share executive offices. At the time of the Merger Agreement, GOV owned 24,918,421 shares, 27.8%, of SIR's common stock. ¶ 21. The entities share board members and management. Individual Defendant Portnoy is a managing trustee of SIR and GOV and a managing director, president, and chief executive officer of RMR. ¶ 12. Individual Defendant David M. Blackman is a managing trustee, President, and CEO of SIR and is also the president and chief executive officer of GOV—and, effective January 1, 2019, a GOV managing trustee. ¶ 13. Individual Defendant Jeffrey P. Somers is a trustee of both SIR and GOV. ¶ 14. References to "¶_" are to the Complaint filed on November 9, 2018 in this Action. Capitalized terms are defined in the Complaint and/or prior motions unless defined herein.

On October 1, 2018, shareholders' concerns intensified when Defendants caused the filing of a materially incomplete and misleading preliminary joint proxy statement/prospectus (the "Preliminary Proxy") with the U.S. Securities and Exchange Commission ("SEC"). In attempting to convince SIR shareholders to vote in favor of the Proposed Merger, the Preliminary Proxy omitted or misrepresented critical information that prevented shareholders from assessing the fairness of the Proposed Merger, including the following categories of information: (i) projected financial information for SIR, GOV, and the combined company; (ii) the valuation analyses performed by UBS in support of its fairness opinions; (iii) the conflicts of interest faced by UBS; and (iv) the conflicts of interest surrounding the negotiating parties.

On October 3, 2018, Plaintiff retained Monteverde & Associates PC to challenge the Proposed Merger. After a thorough investigation, on November 9, 2018, Plaintiff filed his complaint [ECF 1] (the "Complaint") alleging violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Item 1015 of Regulation M-A ("Reg M-A"), 17 C.F.R. 229.1015, and seeking to enjoin Defendants from holding the forthcoming shareholder vote on the Proposed Merger until the omitted material information was disclosed to SIR shareholders.

On November 16, 2018, Defendants filed the definitive proxy statement (the "Proxy") which failed to address all but one of the disclosure deficiencies raised in Plaintiff's Complaint[2] and scheduled the special meeting of SIR shareholders to vote on the Proposed Merger for December 20, 2018, at 3:00 p.m., Eastern Time (the "Shareholder Vote"). Declaration of Juan E.

---

[2]     The Proxy disclosed the SIR Special Committee was comprised of Donna D. Fraiche and William A. Lamkin and the GOV Special Committee was comprised of Barbara D. Gilmore, John L. Harrington, and Elena Poptodorova. *See* Ex. 1 at 82-83.

Monteverde in Support of Plaintiff's Application for an Award of Attorneys' Fees and Expenses ("Monteverde Decl."), Ex. 1.

On November 20, 2018, Plaintiff sent a letter to Defendants demanding the disclosure of the material information identified in the Complaint and supporting legal authority for its requests. After no response from Defendants and in light of the fast approaching Shareholder Vote, on November 21, 2018, Plaintiff filed his Motion for Preliminary Injunction [ECF 10] seeking to enjoin the Shareholder Vote until the material information omitted from the Proxy was disclosed to SIR shareholders.

On November 28, 2018, Plaintiff sent a letter to the Court pursuant to Local Civil Rule 37.2 [ECF 13] seeking narrow, targeted discovery to crystallize the issues for the preliminary injunction hearing and ensure a clear and focused factual record for the Court. That same day, the Court scheduled a hearing on Plaintiff's Motion for Preliminary Injunction for December 13, 2018 at 11:00 a.m. [ECF 14].

The following day, on November 29, 2018, Defendants sent a draft of the proposed supplemental disclosures they were prepared to make that would address and moot Plaintiff's Motion for Preliminary Injunction (the "Supplemental Disclosures"). On the morning of December 3, 2018, Plaintiff urged Defendants to make the Supplemental Disclosures immediately, and offered to withdraw Plaintiff's Motion for a Preliminary Injunction. But once again, Defendants did not respond.

Instead, on December 5, 2018, Defendants filed their Opposition to Plaintiff's Request for Expedited Discovery [ECF 18] and their Opposition to Plaintiff's Motion for a Preliminary Injunction [ECF 19]. Therein, Defendants characterize the disclosures as "frivolous" and claim that Plaintiff is "nit-picking" "certain immaterial minutiae." Yet less than twenty-four hours later,

on December 6, 2018, Defendants informed Plaintiff that they would issue the Supplemental Disclosures on or before December 10, 2018. As a result, Plaintiff's disclosure claims raised in his Motion for Preliminary Injunction were moot, obviating the need for an Injunction—and corresponding expedited discovery. Thus, on December 7, 2018, Plaintiff filed a notice of withdrawal of his Motion for Preliminary Injunction and his request for expedited discovery.

On December 10, 2018, SIR filed the Supplemental Disclosures on a Form 8-K with the SEC. (Ex. 2). In other words, Plaintiff's litigation efforts "provide[d] a necessary supplement to Commission action[,]" which was the very reason the Supreme Court held stockholders have a private right of action under Section 14(a). *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964) (noting that the SEC examines thousands of "proxy statements annually and each of them must necessarily be expedited. Time does not permit an independent examination of the facts set out in the proxy material.").[3]

Plaintiff's Counsel now moves for a Fee Award in connection with the dissemination of the Supplemental Disclosures, which will enable SIR shareholders to fully assess the fairness of the Proposed Merger and exercise their corporate suffrage rights on an informed basis.

## III.   PLAINTIFF'S COUNSEL ARE ENTITLED TO THE FEE AWARD UNDER THE COMMON BENEFIT DOCTRINE

For their determined, ongoing effort on behalf of SIR shareholders to ensure that their vote on the Proposed Merger be fully informed, Plaintiff's Counsel are entitled to the Fee Award under relevant federal law.

---

[3]   All internal citations and punctuation have been omitted and all emphasis added unless otherwise noted.

A.     The Applicable Law

Courts have long permitted counsel who create a benefit for others to recover their expenses, including reasonable attorneys' fees, from those who enjoy the benefit conferred. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975); *Mills*, 396 U.S. at 394-95. An award of reasonable attorneys' fees and expenses is appropriate when counsel's efforts confer a "substantial" or "common" benefit on the members of an ascertainable class and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them. *Mills*, 396 U.S. at 396. In *Mills*, the Supreme Court held that vindicating Section 14's statutory policy of "informed corporate suffrage" confers a substantial benefit upon stockholders sufficient to warrant awarding attorneys' fees:

> In many suits under § 14 (a) . . . it may be impossible to assign monetary value to the benefit. Nevertheless, the stress placed by Congress on the importance of fair and informed corporate suffrage leads to the conclusion that, in vindicating the statutory policy, petitioners have rendered a substantial service to the corporation and its shareholders . . . [P]rivate stockholders' actions of this sort involve corporate therapeutics, and furnish a benefit to all shareholders by providing an important means of enforcement of the proxy statute.

396 U.S. at 396.[4]

---

[4]     The *Mills* Court further explained that requiring a corporation to pay Plaintiff's attorneys' fees is the proper way to spread the costs proportionately among the benefitting shareholders, as doing so "is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit." 396 U.S. at 396-97. *See also Lane v. Page*, 862 F. Supp. 2d 1182, 1255 (D.N.M. 2012) ("[C]ourts increasingly have recognized that the expenses incurred by one shareholder in the vindication of a corporate right of action can be spread among all shareholders through an award against the corporation, regardless of whether an actual money recovery has been obtained in corporation's favor."); *Hall v. Cole*, 412 U.S. 1, 7 (1973) ("Under these circumstances, reimbursement of the plaintiffs' attorneys' fees out of the corporate treasury simply shifted the costs of litigation to the class that has benefited from them and that would have had to pay them had it brought the suit.").

Since *Mills*, it has become "well established that non-monetary benefits, such as promoting fair and informed corporate suffrage . . . may support a fee award." *Koppel v. Wien*, 743 F.2d 129, 134-135 (2d Cir. 1984); *see also Kopet v. Esquire Realty Co*., 523 F.2d 1005, 1008 (2d Cir. 1975) (finding a fee award warranted where litigation caused company to disclose financial statements). The Second Circuit has specifically held that procuring equitable relief under the Exchange Act serves as a basis for a fee request. *See Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 54 F.3d 69, 71 (2d Cir. 1995) (finding the "common-benefit rationale often is applied in suits by a group of shareholders against a corporation to vindicate some substantial right of all the shareholders of the company" and holding "that the promotion of corporate suffrage regarding a significant policy issue confers a substantial benefit regardless of the percentage of votes cast for or against the proposal at issue.").[5]

Further, "an award of plaintiffs' attorney's fees is not precluded because no judgment or consent decree was entered and the complaint was dismissed as moot.  Fees may be awarded even when there is no judgment on the merits or when the dispute has become moot because the relief sought is otherwise obtained." *Koppel*, 743 F.2d at 135.  Indeed, courts award attorney's fees where the need for further litigation became moot because of concessions made by defendants in response to pre-litigation demand letters, *Blau v. Rayette-Faberge, Inc*., 389 F.2d 469, 474 (2d Cir. 1968), and the filing of a complaint.  *Kahan v. Rosenstiel*, 424 F.2d 161, 164, 175 (3rd Cir. 1970). "Indeed, in *Mills* attorney's fees were awarded to the plaintiffs although it was not yet determined

---

[5]      *See also In re Schering-Plough/Merck Proposed Merger Litig*., No. 09-CV-1099 (DMC), 2010 U.S. Dist. LEXIS 29121, at *49 (D.N.J. Mar. 25, 2010) (awarding $3.5 million attorney's fee in disclosure-based settlement where "the supplemental disclosures facilitated communication and informed shareholders of previously undisclosed material information permitting shareholders to exercise their voting rights accordingly").

what relief if any plaintiffs could obtain." *Kahan*, 424 F.2d at 167.  As the D.C. Circuit explained

in *Yablonski v. United Mine Workers*:

> The Supreme Court in Mills [] noted that the relevant inquiry is not into the technical posture of the litigation, but whether it has conferred a substantial benefit on the members of an ascertainable class…As all lawyers know, a lawsuit does not always have to go to final adjudication on the merits in order to be effective. Assuming the effectiveness in terms of practical results, the litigating stage attained is relevant only to the amount of the fees to be allowed, and not to the issue of whether they should be awarded at all.

466 F.2d at 431.

Finally, in connection with such a claim, *Defendants* "bear the burden of production and

persuasion on the issue of causation. Where, as here, [P]laintiffs' lawsuit is mooted by defendants'

corrective action, the burden properly shifts to defendants to establish the absence of a causal

connection in order to defeat a claim for legal fees." *Koppel*, 743 F.2d at 135. The common benefit

does not need to flow *solely* from this litigation for Plaintiff's Counsel to be entitled to recover an

award of attorney's fees and expenses. [6]  In short, to meet their burden, Defendants are essentially

required to persuade this Court that the lawsuit was not a factor in their decision-making and

subsequent conduct.  *Koppel*, 743 F.2d at 135.

Here, as further explained below, Plaintiff conferred a substantial benefit on SIR

shareholders through his prosecution of the action causing Defendants to issue the Supplemental

Disclosures. Any argument by Defendants to the contrary would strain credulity, as Defendants

concede in the Supplemental Disclosures that they were made "solely for the purpose of mooting

---

[6]     Notably, "[f]or a causal connection to be established, the lawsuit need not have been the only possible cause or even the primary cause of the corporation's actions." *Lewis v. Gen. Emp't Enters., Inc.*, No. 91 C 0291, 1992 U.S. Dist. LEXIS 5464, at *11 (N.D. Ill. Apr. 10, 1992). "Rather, the lawsuit need only have been a contributing cause of the corporate benefit. In short, to meet their burden, defendants essentially are required to persuade this Court that the lawsuit was not a factor in their decision-making and subsequent conduct." *Id.* *11.

the allegations in the Lawsuits and avoiding the expense and burden of litigation." Ex. at 2.

Although other actions have been filed in this Court and two others,[7] none of those actions filed

an injunction or appear to have been actively litigated. Plaintiff was the first to file a complaint,

Plaintiff was the only plaintiff to seek a preliminary injunction, and Plaintiff was the only plaintiff

to seek expedited discovery. Defendants specifically cite to a desire to "avoid[] the expense and

burden of litigation" as the reason of issuing the Supplemental Disclosures, and Plaintiff was the

only plaintiff actively litigating. Moreover, Plaintiff was the only plaintiff to identify the failure to

disclose the identity of the special committee members and the misleading identification of Somers

as "independent," and thus, must be the cause of the corrective disclosures. Simply put, Plaintiff

Jesse Chen is the only plaintiff effectively fighting for the vindication of SIR shareholders' rights

and caused the Defendants to issue the Supplemental Disclosures.[8]

### B.    The Supplemental Disclosures Provide a Substantial Benefit

Courts have long recognized the value of corrective disclosures like those at issue here.

*See, e.g.*, *Cooperstock*, 820 F. Supp. at 924 (citing *Mills*, 396 U.S. at 394-96) ("The 'substantial

benefit' requirement [] has been interpreted broadly and has been held to include pecuniary as well

---

[7]      *Sinkula v. Select Income REIT, et al*., Case No. 1:18-cv-12389-DJC (D. Mass. Nov. 15, 2018); *Scarantino v. Fraiche et al.*, No. 24-C18006068 (Circuit Court Baltimore City Nov. 16, 2018); S*chwartz v. Select Income REIT, et al.*, Civ. No. 1:18-cv-10790 (S.D.N.Y. Nov. 19, 2018).

[8]      Although a showing of meritorious claim is not required for attorneys' fees in the Second Circuit, *Savoie v. Merchants Bank*, 84 F.3d 52, 57 (2d Cir. 1996) ("In addition to a causal connection, some Circuits have required a showing that the complaint has sufficient merit to survive a motion to dismiss, before they will award fees when a case has been mooted. This Court has not imposed that additional requirement, and we decline to do so now."), to the extent Defendants attempt to raise the specious argument, "'[i]t is not necessary that factually there be absolute assurance of ultimate success, but only that there be some reasonable hope.'" *Cooperstock v. Pennwalt Corp*., 820 F. Supp. 921, 924 (E.D. Pa. 1993). Here, as noted below, courts have denied motions to dismiss and granted preliminary injunctions in actions premised upon the same types of disclosures included in the Supplemental Disclosures. Accordingly, there is no doubt that Plaintiff "had some reasonable hope for success" on his claims, and there is a strong likelihood Plaintiff would have prevailed on the merits of those claims had Defendants failed to moot them.

as nonpecuniary gains."). Indeed, timely, meaningful disclosures like the Supplemental Disclosures can provide greater benefit to a class than money damages, as additional information is "presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform the stockholders' decision making process" *In re Talley Indus., Inc. S'holders Litig.*, No. 15961, 1998 Del. Ch. LEXIS 53, at \*46 (Del. Ch. Apr. 9, 1998). As noted above, based on Plaintiff's Counsel's efforts, SIR issued Supplemental Disclosures covering four categories of plainly material information: (i) unlevered free cash flows; (ii) UBS's valuation analyses; (iii) UBS's conflicts of interest; and (iv) the Board's conflicts of interest. As outlined below, this information conferred a substantial benefit on SIR shareholders.

### 1. SIR's, GOV's, and the Combined Company's Unlevered Free Cash Flows

First, the Supplemental Disclosures provide to shareholders the unlevered free cash flow projections for SIR, GOV, and the pro forma combined company—including synergies—that were previously omitted from the Proxy. Unlevered free cash flows are the most highly prized projections shareholders seek when valuing a company for a merger transaction, and their disclosure is plainly material for the SIR shareholders to cast an informed vote. In *Nichting v. DPL Inc.*, the court found that "it smacks of materiality that a voter be made aware of the Company's cash flow projections in order to make an informed decision." No. 3:11-cv-141, 2011 U.S. Dist. LEXIS 76739, at \*17 n.16 (S.D. Ohio July 15, 2011). Ironically, the defendants in *DPL* were represented by the same counsel that represents Defendants in this Action. *See id.* So, they were well aware that free cash flows are found to be material information under federal securities laws. *See, e.g., United States v. Smith*, 155 F.3d 1051, 1064 n.20 (9th Cir. 1998) ("After all, investors are concerned, perhaps above all else, with the future cash flows of the companies in

which they invest."). Unlevered free cash flow projections are so highly prized because "under sound corporate finance theory, the value of stock should be premised on the expected future cash flows of the corporation . . . ." *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1178 (Del. Ch. 2010) (enjoining the merger for the failure to disclose unlevered free cash flows). Unlevered free cash flows are preferred over other accounting metrics, including those disclosed in the Proxy, because they allow shareholders "to separate economic reality from accounting-based noise." "Morningstar's Approach to Equity Analysis and Security Valuation." *The Valuation Handbook: Valuation Techniques from Today's Top Practitioners*. Ed. Rawley Thomas and Benton E. Gup. Hoboken: John Wiley & Sons, 2010. 305.

It comes as no surprise then, that UBS elected to utilize unlevered free cash flow projections in performing all three of its discounted cash flow analyses. Ex. 1 at 117.[9] Yet, inexplicably, Defendants omitted the cash flow projections from both the summary of the two companies' financial projections on pages 128 and 130 of the Proxy and the summaries of each of the discounted cash flow analyses performed by UBS on pages 122-123 of the Proxy. By providing the previously withheld cash flow projections, the Supplemental Disclosures cure the material omissions and misrepresentations of the Proxy.

Disclosure of financial projections have been found by federal courts across the country to be material. *See e.g. SEC v. Nat'l Student Mktg. Corp.*, 457 F. Supp. 682, 707 (D.D.C. 1978)

---

[9]     "[UBS] performed a discounted cash flow analysis of SIR excluding ILPT in which UBS analyzed the future cash flows of SIR excluding ILPT using financial forecasts and estimates prepared by the management of SIR; performed a discounted cash flow analysis of GOV in which UBS analyzed the future cash flows of GOV using financial forecasts and estimates prepared by the management of GOV; performed a pro forma discounted cash flow analysis of GOV in which UBS analyzed the future cash flows of GOV on a pro forma basis assuming the transaction is consummated, using financial forecasts and estimates prepared by the management of SIR and the management of GOV, including certain estimates of synergies;"

("Perhaps nothing is more relevant to a vote on whether or not to approve a merger than the earnings picture of the acquiring company, at least to the stockholder of the company being acquired.'") (quoting *Republic Tech. Fund, Inc. v. Lionel Corp.*, 483 F.2d 540, 547 (2d Cir. 1973)); *see also SEC v. Todd*, 642 F.3d 1207, 1221 (9th Cir. 2011) ("Information regarding a company's financial condition is material to investment."); *SEC v. Murphy*, 626 F.2d 633, 653 (9th Cir. 1980) ("Surely the materiality of information relating to financial condition, solvency and profitability is not subject to serious challenge."). Accordingly, curing this disclosure violation through the Supplemental Disclosures allows SIR shareholders to accurately assess the fairness of the Merger Consideration and conferred a substantial benefit upon them.

### 2.   UBS's Valuation Analyses

Second, the Supplemental Disclosures provide to shareholders the key inputs and assumptions omitted from the summaries of UBS's valuation analyses in the Proxy, including their *Discounted Cash Flow* Analyses ("DCFs"), their *Selected Public Companies* Analyses and their *Selected Precedent Transactions Analysis*. This information is material to shareholders and necessary for them to understand the valuation analyses and fairly analyze the value of the Merger Consideration. *See, e.g. In re Pure Res., Inc. S'holders Litig.*, 808 A.2d 421, 449-450 (Del. Ch. 2002) (emphasizing that "stockholders are entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely" and that "[t]he real informative value of the banker's work is not in its bottom-line conclusion, but in the valuation analysis that buttress that result.").

A DCF takes projected cash flows, applies a terminal value and a company-specific discount rate, and discounts the cash flows back to present value to estimate a current stand-alone valuation. The Proxy misleadingly summarized UBS's DCFs by disclosing the discount rates, but

omitting the terminal values and cash flows. However, the Supplemental Disclosures provide both the unlevered free cash flow projections and the terminal values calculated for each DCF analysis, curing the incomplete disclosures. *Compare* Ex. 1 at 122-123 *with* Ex. 2 at 4-6.

The inputs and assumptions underlying the values utilized in a DCF are material to shareholders, as they are necessary for shareholders to determine if the banker's calculations were appropriate. *See Simonetti*, 2008 Del. Ch. LEXIS 78, at *30 ("The key assumptions made by a banker in formulating his opinion are of paramount importance to the stockholders because any valuation analysis is heavily dependent upon the projections utilized."); *accord Robbins & Myers*, 969 F. Supp. 2d at 871-72 (finding the omission of such information material and denying the motion to dismiss). The projections underlying a financial advisor's valuation analyses are plainly material to shareholders. *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 203-04 (Del. Ch. Mar. 14, 2007). Similarly, the calculation of a terminal value within a DCF "has a material impact on [the] ultimate conclusion as to the [] enterprise value." *In re Nellson Nutraceutical, Inc.*, 356 B.R. 364, 374 (Bankr. D. Del. Dec. 4, 2006).

With respect to UBS's *Selected Public Companies* Analyses and *Selected Precedent Transactions Analysis*, the Supplemental Disclosures provide SIR shareholders with the omitted individual multiples UBS calculated for each company and transaction utilized in their analyses.

The Delaware Court of Chancery has emphasized the materiality of valuation multiples such as the ones omitted from the Proxy in connection with determining the fair value of a company. *See, e.g., Turberg v. ArcSight*, C.A. No. 5821-VCL,Transcript of Record at 43 (Del. Ch. Sept. 20, 2011) (Ex. 3) ("[I]f you were to consider what really constitutes a fair summary, then the background multiples should be on there, just like they're in there when you give them to the board .... [Y]ou would never see a board book that would go to the board without the background

multiples."); *In re Celera Corp. S'holder Litig.*, No. 6034-VCP, 2012 Del. Ch. LEXIS 66, at *122 (Del. Ch. Mar. 23, 2012), *aff'd in part & rev'd in part*, 59 A.3d 418 (Del. 2012) ("[A] fair summary of a comparable companies or transactions analysis probably should disclose the market multiples derived for the comparable companies or transactions.").

Federal courts have followed suit, noting individual multiples are material to the shareholders' ability "to assess the reliability of the analysis as supporting the fairness of the Merger consideration." *Robbins & Myers*, 969 F. Supp. 2d at 874 (denying defendants' motion to dismiss Sections 14(a) claims, in part, on the failure to disclose the individually observed multiples). Accordingly, curing these disclosure violations through the Supplemental Disclosures allows SIR shareholders to comprehend UBS's valuation analyses and accurately assess the fairness of the Merger Consideration, thus conferring a substantial benefit upon them.

### 3. UBS's Conflicts of Interest

Third, the Supplemental Disclosures informs shareholders of the compensation UBS received for its previous work for SIR, GOV, ILPT, and RMR. The disclosure of this material information is important for two reasons.

First, the complete disclosure of UBS's historical compensation allows shareholders to fully understand and fairly assess UBS's conflict of interest when deciding how much weight to give their analysis in the voting process. *See In re Rural Metro Corp. Stockholders Litig.*, 88 A.3d 54, 105 (Del. Ch. 2014) ("Information that bears on whether an investment bank faces conflicts of interest is material to stockholders when deciding how to vote on a merger. It is imperative for the stockholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered in assessing how much credence to give its analysis. For that reason,

the benefits of the Merger to the investment banker, beyond its expected fee, must also be disclosed to the stockholders. There is no rule that conflicts of interest must be disclosed only where there is evidence that the financial advisor's opinion was actually affected by the conflict.").

Second, the Supplemental Disclosures cure a statutory violation of Reg M-A, which plainly requires the disclosure of "any compensation received or to be received as a result of the relationship between" a financial advisor and the subject company or its affiliates. 17 C.F.R. § 229.1015(b)(4); *see also Resnik v. Swartz*, 303 F.3d 147, 151 (2d Cir. 2002) (The "omission of information from a proxy statement will violate [section 14(a) of the Exchange Act] if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading.").

By fully disclosing the conflicts of interest faced by UBS while acting as SIR's financial advisor and rendering its fairness opinion, SIR shareholders are now able to decide how much credibility to give its analysis. Additionally, the corrective disclosures ensured compliance with SEC regulations. Therefore, the Supplemental Disclosures conferred a substantial benefit.

### 4. The Board's Conflicts of Interest

Fourth, the Supplemental Disclosures provide shareholders material details related to the conflicts of interest surrounding the SIR Board and Special Committee regarding the negotiation process, including the identities of the SIR Special Committee members and the identities of those attending meetings labeled as "independent trustees" in the *Background of the Merger* section of the Proxy. It is well established that once a board "travels down the road of partial disclosure of the history leading up to the Merger," the duty of disclosure requires them "to provide the stockholders with an accurate, full, and fair characterization of those historic events." *Arnold v. Soc'y for Sav. Bancorp*, 650 A.2d 1270, 1280 (Del. 1994).

Originally, the Preliminary Proxy stated only that Donna D. Fraiche was appointed by the SIR Special Committee to be the Chair of the SIR Special Committee. The Proxy then further elaborated and indicated that the SIR Special Committee was comprised of Donna D. Fraiche and William A. Lamkin. Finally, the Supplemental Disclosures cure the misleading, partial disclosures made in the Proxy and Preliminary Proxy stating that in addition to the disinterested members of the SIR Special Committee, that Individual Defendant Sommers—a trustee of GOV—sat in on SIR Special Committee meetings. This disclosure corrected the misleading "independent" label that had previously described those attending the meeting and revealed a patent conflict of interest. Additionally, it indicates that the SIR Special Committee failed in its purpose to wall-off the conflicts of interest that plagued the Board. Accordingly, this disclosure is of great importance— and hence material—to SIR shareholders. *See Zirn v. VLI Corp.*, Del. Supr., 681 A.2d 1050, 1056 (1996) ("In addition to the traditional duty to disclose all facts material to the proffered transaction, directors are under a fiduciary obligation to avoid misleading partial disclosures. . . . [E]ven a nonmaterial fact can, in some instances, trigger an obligation to disclose additional, otherwise non-material facts in order to prevent the initial disclosure from materially misleading the stockholders."); *accord Wilson v. Great Am. Indus.*, 855 F.2d 987, 995 (2d Cir. 1988) ("[A] failure to disclose a relationship between interested parties that might assume significance in the deliberations of a reasonable shareholder is within the province of the federal securities laws, and that disclosure of such various interests, will give notice to a shareholder to examine the proposed transaction more critically. . . . The relevant inquiry is not whether an actual conflict of interest existed, but rather whether full disclosure of potential conflicts of interest has been made.").

Therefore, the Supplemental Disclosures conferred a substantial benefit by providing plainly material information to SIR shareholders and allowing them to enter the voting process fully informed to decide for themselves whether the Proposed Merger is fair.

### C.      The Requested Fee Award Is Reasonable

Where, as here, there is no "common fund" out of which attorneys' fees can be awarded, the lodestar method, with an appropriate multiplier, is the proper method to measure a requested fee award.  *See, e.g., Perez v. AC Roosevelt Food Corp.*, 744 F.3d 39, 44 (2d Cir. 2013) (utilizing the lodestar method when there was no common fund); *Amalgamated Clothing*, 54 F.3d at 73 (affirming order awarding fees for enhanced disclosure based on lodestar and multiplier). In determining the appropriate amount of an award of attorneys' fees, the Court should consider Plaintiff's Counsel's lodestar and expenses, as well as the following relevant factors (the "Johnson factors"). Here, application of the relevant Johnson factors demonstrates that the Fee Award should be granted in full.

The Fee Award in this case is reasonable under the factors adopted by the Second Circuit Court of Appeals.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 114 n.3 (2d Cir. 2007) (citing the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)); *see also In re AOL Time Warner S'holder Derivative Litig.*, No. 02 Civ. 6302 (CM), 2009 U.S. Dist. LEXIS 124372, at *22-*23 (S.D.N.Y. Nov. 9, 2009) (noting that "in *Arbor Hill*, the Court of Appeals revivified the criteria enunciated in *Johnson*" and listing the twelve *Johnson* factors).[10]   Here, application of the relevant *Johnson* factors demonstrates that the requested Fee Award should be granted in full.

---

[10]      The *Johnson* factors are: (i) the time and labor required; (ii) the novelty and difficulty of the question presented by the case; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment by the attorneys due to acceptance of the case; (v) the

### 1.   The Time and Labor Required

Plaintiff's Counsel expended a total of 207.9 hours of attorney and paralegal time in prosecuting this action, including pre-suit investigation; drafting the complaint; reviewing and analyzing the Preliminary Proxy and the Proxy; drafting and sending a demand letter to Defendants' counsel; drafting and filing a memorandum of law and motion for preliminary injunction; meeting and conferring with Defendants' counsel; drafting and filing a letter motion for expedited discovery to develop the record for the preliminary injunction hearing; reviewing and analyzing Defendants' responses to the motions; and drafting and filing the instant motion.[11] *See* Monteverde Dec. ¶ 15.  The work performed was necessary to protect the rights of SIR shareholders, and resulted in the Supplemental Disclosures.  Further, "the purpose of the fee award is to compensate the attorney for the reasonable value of services benefiting the . . . claimant." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) ("In granting fees in cases such as this, courts recognize that such awards serve the dual purposes of encouraging representatives to seek redress for injuries caused to public investors and discouraging future misconduct of a similar nature.")

In calculating the lodestar amount, Plaintiff's Counsel have applied their regular hourly rates, which are reasonable for litigation of this nature and are in line with rates approved by courts

---

customary fee; (vi) whether the fee is fixed or contingent; (vii) any time limitations imposed by the client or the circumstances; (viii) the amount involved and the results obtained; (ix) the experience, reputation and ability of the attorneys; (x) the undesirability of the case; (xi) the nature and length of the professional relationship with the client, and; (xii) awards in similar cases.  *AOL Time Warner*, 2009 U.S. Dist. LEXIS 124372, at *23

[11]     "Fees are allowed for fee litigation in a common benefits case because to do so furthers the purposes served by the allowance of fees on the merits." *Kinney v. International Brotherhood of Electrical Workers*, 939 F.2d 690, 694 (9th Cir. 1991); *McCafferty v. Local 254, SEIU*, 186 F.3d 52, 62 (1st Cir. 1999) ("The principle is well established that the fee application is a necessary part of the award of attorney's fees. If the original award is warranted . . . a reasonable amount should be granted for time spent in applying for the award.").

within the Second Circuit in securities class actions. *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-Civ-8557 (CM), 2014 U.S. Dist. LEXIS 177175, at *38-*39 (S.D.N.Y. Dec. 19, 2014) (finding the rates billed by lead counsel, which ranged from $425 to $825 per hour, were comparable to peer plaintiffs firms litigating securities class action matters); *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM), 2014 U.S. Dist. LEXIS 64517, at *37-*39 (S.D.N.Y. May 9, 2014) (finding plaintiff's counsel's rates, which ranged from $640 to $875 for partners and $335 to $665 for other attorneys, reasonable because they were in line with the rates charged by New York firms that defend class actions); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at * (S.D.N.Y. Feb. 1, 2007) (finding a partner who billed $850 per hour and a senior associate who billed at $515 per hour not inordinate for top-caliber New York law firms); *Williamsburg Fair Hous. Comm. v. N.Y. City Hous. Auth.*, No. 76 Civ. 2125, 2005 U.S. Dist. LEXIS 5200, at *35 (S.D.N.Y. Mar. 31, 2005) (noting that "a recent billing survey made by the National Law Journal shows that senior partners in New York City charge as much as $ 750 per hour and junior partners charge as much as $ 490 per hour") (citing *In Focus: Billing; A Firm-by-Firm Sampling of Billing Rates Nationwide*, NAT'L LAW JOURNAL, December 6, 2004, at 22)).[12]

### 2. The Customary Fees in Similar Cases

The Supplemental Disclosures include the type of information that has supported an award of attorneys' fees consistent with the Fee Award. For example, in *Plato Learning*, the Court

---

[12] Plaintiff's Counsel's hourly rates are undoubtedly in line with or less than the rates charged by Defendants' Counsel, which is a relevant consideration. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 589 (S.D.N.Y. 2008) (noting partnership level billing rates at several defense firms and finding that "[t]he current hourly rates of the partners litigating this action on behalf of the Class, who performed the vast majority of the partner-level work on this matter, range from $700 to $ 750. Those rates fall within the norm of the rates charged by those attorneys' common adversaries in the defense bar.").

described the omission of cash flow projections—like those omitted here—as "inexplicable" and enjoined the transaction on that basis, *Plato Learning*, 11 A.3d at 1178, after which defendants in that matter paid $750,000 for the omission. (Ex. 4). *See also Nichting v. DPL Inc.*, No. 3:11-cv-141, Order and Final J. 7 (S.D. Ohio Feb. 24, 2012) ($700,000 fee for disclosure of previously withheld unlevered free cash flow projections) (Ex. 5); *Aron v. Crestwood Midstream Partners LP*, No. 4:15-CV-1367, 2016 U.S. Dist. LEXIS 152427 (S.D. Tex. Oct. 14, 2016) ($575,000 fee for disclosure of upside case projections).[13] More recently, in the context of pure mootness cases, fee awards for lesser disclosures than those at issue here have yielded similar fee awards or agreements to that requested here. *See, e.g., Joel Rosenfeld IRA* v. *Cynosure, Inc., et al.*, No. 17-10309, Stipulation and Order Closing Action (D. Mass. Feb. 5, 2018) ($300,000 fee) (Ex. 6); *Garcia v. Kate Spade & Co*, No. 17-cv-4177, Letter (S.D.N.Y. Aug. 28, 2017) ($320,000 fee) (Ex. 7); *Kim v. BATS Global Markets, Inc.*, No. 2:16-cv-02817, Stipulated Order Dismissing Action (D. Kan. Jan 13, 2017) ($350,000 fee) (Ex. 8); *In re Office Depot, Inc. Stockholders Litigation*, No. 10655-CB, Stipulation and Order Regarding Payment of Attorneys' Fees and Expenses (Del. Ch. Oct. 27, 2015) ($500,000 fee) (Ex. 9).

---

[13]     While these fees were agreed to by the parties, defense counsel undoubtedly sought to protect their client's interests by agreeing to the lowest reasonable fee they determined a court could award in the event the fee issue was litigated. *See Moore v. Verizon Commc'ns Inc.*, No. C 09-1823 SBA, 2013 U.S. Dist. LEXIS 15609, at *48 (N.D. Cal. Feb. 5, 2013) (noting that party agreeing to pay attorneys' fees as part of settlement has one "ultimate objective - paying as little as possible. . ."); *Unite Nat'l Ret. Fund v. Watts*, No. 04-CV-3603 (DMC), 2005 U.S. Dist. LEXIS 26246, at *17-18 (D.N.J. Oct. 27, 2005) (awarding $9.2 million fee in non-pecuniary corporate governance based settlement, and giving weight to fact that defendant agreed to pay the fee "based on its perceived value of the settlement, that the fee negotiations were based upon a knowledgeable analysis of the appropriate fee for the benefits achieved, and that the end result reflects the parties' experience as to what is appropriate and fair.").

3.   **The Skill Requisite to Perform the Legal Service Properly, the Novelty and Difficulty of the Question Presented by the Case, the Preclusion of Other Employment, and Time Limitations Imposed by the Circumstances**

"[B]ecause of the complexity and societal importance of stockholder and derivative litigation, the most able counsel should be obtained. The attorney's fees awarded should reflect this goal." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 866 (E.D. Mo. 2005); *see also In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 172 (S.D.N.Y. 2007) ("[s]ecurities class litigation is notably difficult and notoriously uncertain."); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM), 2010 U.S. Dist. LEXIS 119702, at *62-*63 (S.D.N.Y. Nov. 8, 2010) ("Courts in this circuit have noted, in the past, that securities class actions are generally complex and expensive to prosecute."). In this case, Plaintiff's Counsel was required to thoroughly and expeditiously review multiple, voluminous proxy statements to assess whether Defendants failed to disclose material information or corrected previously-identified non-disclosures and/or inconsistencies. Thoroughly and properly analyzing complex proxy statements and valuation analyses is time-consuming and often difficult, even for those experienced in doing so, and Counsel demonstrated skill and perseverance in performing the required services.

What is more, in light of the fact that disclosure deficiencies are best resolved before a shareholder vote, Plaintiff's Counsel were required to work under intense time pressure to ensure that the Supplemental Disclosures were filed far enough ahead of the vote for shareholders to digest the new information. Courts have recognized that counsel should not receive a lesser fee for resolving a case quickly because, in many instances, such as this litigation, "it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002). Finally, Plaintiff's Counsel are members of a small law firm, and acceptance of this action necessarily precluded them from

devoting resources to other cases. *See Denton v. Pennymac Loan Servs., LLC*, 252 F. Supp. 3d 504, 518 (E.D. Va. 2017) (accounting for the fact that counsel "is a small law firm and thus representing a client on a contingent fee or fee-shifting basis necessarily involved loss of other opportunities.").

### 4.   The Experience, Reputation, and Ability of the Attorneys

Simply put, Plaintiff's Counsel have extensive experience in prosecuting shareholder class actions, and the firm's attorneys have obtained significant therapeutic benefits and monetary recoveries for shareholders as sole or co-lead counsel in numerous complex class actions across the country. *See* Monteverde & Associates Firm Resume, (Ex. 10).

### 5.   A Reasonable Multiplier is Appropriate Because Plaintiff's Counsel Undertook Representation on a Contingent Basis

Plaintiff's Counsel respectfully submit that, consistent with the *Johnson* factors, a reasonable multiplier of 3.16 is also appropriate in this case. "After a court determines the lodestar amount, it may increase or decrease that amount by applying a lodestar multiplier. The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *In re Schering-Plough/Merck Proposed Merger*, 2010 U.S. Dist. LEXIS 29121, at *55.

The Court should give considerable weight to the fact that Plaintiff's Counsel undertook representation on a contingency basis.[14]  As the Fourth Circuit long ago recognized:

> The contingency of compensation . . . is highly relevant in the appraisal of the reasonableness of any fee claim. The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his

---

[14]   Factor 10, the undesirability of the action, is relevant only to the extent that the contingency element of this putative class action represents excessive risk for many firms.  Additionally, factor 11, the nature and length of the professional relationship with the client, should not be considered, as the litigation centered on a merger that was first announced on September 17, 2018.

> services.  Charges on the basis of a minimal hourly rate are surely inappropriate for
> a lawyer who has performed creditably when payment of any fee is so uncertain.

*McKittrick v. Gardner*, 378 F.2d 872, 875 (4th Cir. 1967).  The significance of this factor has been

reaffirmed on numerous occasions.   Indeed, in *Fleisher v. Phoenix Life Ins. Co.*, this Court

emphasized the importance of this factor.   As the Court explained in holding that a lodestar

multiplier of 4.87 was reasonable and within the normal range of multipliers in this circuit, "under

the lodestar method of fee computation, a multiplier is typically applied to the lodestar.   The

multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature

of the engagement, the skill of the attorneys, and other factors."  No. 11-cv-8405 (CM), 2015 U.S.

Dist. LEXIS 121574, at *59-*60 (S.D.N.Y. Sept. 9, 2015); *In re Global Crossing Sec. & ERISA

Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (same) (citing *Goldberger v. Integrated Res.*, 209

F.3d 43, 47 (2d Cir. 2000)).

Moreover, courts in the Second Circuit commonly find multipliers equal to or above the

multiple implied by Fee Award appropriate. *See In re Telik*, 576 F. Supp. 2d at 590 ("In contingent

litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.");

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. 2002) ("it clearly appears

that the modest multiplier of 4.65 is fair and reasonable"); *Beckman v. KeyBank, N.A.*, 293 F.R.D.

467, 481 (S.D.N.Y. 2013) ("Courts regularly award lodestar multipliers of up to eight times the

lodestar, and in some cases, even higher multipliers.") (collecting cases); *In re EVCI Career Colls.

Holding Corp. Sec. Litig.*, No. 05 Civ. 10240, 2007 U.S. Dist. LEXIS 57918, at *56 n.7 (S.D.N.Y.

July 27, 2007) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this

District.").

In this case, the Court should give considerable weight to the fact that Plaintiff's Counsel

undertook representation on a contingency fee basis on behalf of relatively small shareholder who

would have been unable to pay for experienced counsel to protect his corporate suffrage rights and investigate the fairness of the Merger.  Plaintiff's Counsel expeditiously fought for, and succeeded in procuring, informed corporate suffrage for Plaintiff and all other SIR shareholders under severe time-pressure. Plaintiff's Counsel risked receiving nothing for their work had they been unable to procure the material Supplemental Disclosures.

## IV.    THE FEE AWARD IS ALSO SUPPORTED UNDER STATE LAW

SIR is incorporated in Maryland, and thus entitled to an award of attorneys' fees and expenses under Maryland law for conferring the substantial benefit on SIR shareholders. *See Garcia v. Foulger Pratt Dev.*, Inc., 155 Md. App. 634, 845 A.2d 16 (2003) (collecting Maryland cases recognizing the common benefit and common fund exceptions to the American Rule); *Wittman v. Crooke*, 120 Md. App. 369, 707 A.2d 422 (1998) (recognizing common benefit doctrine in context of supplemental disclosures).

Additionally, courts in Maryland's Business and Technology Case Management Program look upon decisions of the Delaware Court of Chancery as persuasive authority on corporate law matters. *See, e.g., Shenker v. Laureate Education, Inc.*, 411 Md. 317, n.14, 983 A.2d 408 (2009). And it is well-settled under Delaware law that an award of attorneys' fees and expenses is appropriate when counsel's litigation efforts achieve beneficial supplemental disclosures that enable stockholders to better assess the fairness of a merger.  When a plaintiff "generates benefits for the corporation or its stockholders, Delaware law calls for an award of attorneys' fees and expenses . . . ." *In re Del Monte Foods Co. S'holders Litig.*, No. 6027-VCL, 2011 Del. Ch. LEXIS 94, at *26, *35-36 (Del. Ch. June 27, 2011) (finding disclosures related to the projections banker derived and other valuation inputs warranted fee award of $350,000 to $500,000; noting that courts "often award fees of approximately $400,000 to $500,000 for one or two meaningful

disclosures…" and lower awards for disclosures of more "questionable quality"); id. at *33 ("[a]wards for supplemental disclosures about banker analyses and relationships cluster around $400,000 to $500,000.")).

Furthermore, in the mootness context, "a fee can be awarded if the disclosure provides some benefit to stockholders, whether or not material to the vote.  In other words, a helpful disclosure may support a fee award in this context." *In re Xoom Corp. Stockholder Litig.*, No. 11263-VCG, 2016 Del. Ch. LEXIS 117, at *10 (Del. Ch. Aug. 4, 2016) (awarding $50,000); see also In re Golden State Bancorp, 2000 Del. Ch. LEXIS 8, at *8 (awarding fee of $500,000 and holding "it is enough that a reasonable [] stockholder might have considered the additional financials . . . of some interest in deciding how to vote.").

As discussed above in significant detail, Plaintiffs secured the disclosure and dissemination of beneficial Supplemental Disclosures that will enable SIR stockholders to cast an informed vote. Accordingly, Plaintiffs are entitled to the requested Fee Award.

**V.    CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court grant the Fee

Award.


DATE: December 14, 2018                    Respectfully submitted,

                                          */s/ Juan E.  Monteverde*
                                          Juan E. Monteverde (JM-8169)

                                          **MONTEVERDE & ASSOCIATES PC**
                                          Miles D. Schreiner
                                          The Empire State Building
                                          350 Fifth Avenue, Suite 4405
                                          New York, NY 10118
                                          Tel.: (212) 971-1341
                                          Fax: (212) 202-7880
                                          Email: jmonteverde@monteverdelaw.com
                                                  mschreiner@monteverdelaw.com

                                          *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed via the District CM/ECF system on December 14, 2018.

Dated: December 14, 2018          By:     /s/ *Juan E. Monteverde*
                                         Juan E. Monteverde